[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Ruling on Motion to Quash/Protective Order and Objection toSubpoena Duces Tecum
In this personal injury action, the plaintiffs[1] have caused subpoenas duces tecum to be served on each of two physicians who have been disclosed as expert witnesses by the defendant Ford Motor Credit Company ("FMCC"). These physicians apparently reviewed medical records concerning the plaintiff Richard Opotzner and are prepared to offer certain opinions at trial. The subpoenas duces tecum require that the physicians bring with them, at such time as they are required to appear by the defendant, various documents; the defendant FMCC objects to many of the demands. Trial in the matter is scheduled to begin shortly.
The subpoenas request several sorts of documentation which are not objected to; these items include the witness' complete file regarding the plaintiff and any bills and reports regarding the plaintiff. These items are, of course, routine.
The subpoena duces tecum directed to Dr. Bazos goes on to demand other items which have been objected to, including complete billing records of both the individual physician and the professional corporation with which he is affiliated for independent medical examinations ("IME's") performed "for defendants and/or insurance companies" over a three year period of time, all reports by the individual or the corporation regarding IME's for a three year period; all reports following a record examination for a similar period, and the individual and corporate income tax returns for three years, including all 1099 forms received. The subpoena duces tecum served upon Dr. Donaldson was similar, but it omitted references to any professional corporation with which he is affiliated. It does, however, include references to all the reports and bills regarding IME's and record reviews, as well as individual income CT Page 2030 tax returns and 1099 reports received.
The plaintiff has responded to the objection first by asserting that the defendant FMCC lacks standing to object to subpoenas directed to non parties. Both sides have referred to Practice Book rules concerning discovery, which ordinarily takes place before trial rather than at trial. As most, but not all, pretrial discovery is specifically directed to the other party, some of the language regarding parties may not be entirely germane to an issue involving a nonparty at trial. The language of the rules and the case law are, however, at least instructive and I will briefly discuss the arguments made.
The thrust of the plaintiff's argument is that a number of the rules regarding discovery refer to a "party's" ability to object to various items of discovery. The plaintiff refers specifically to §§ 13-5 and 13-28(d) of the Practice Book.[2]
On the assumption that the rules in Chapter 13 of the Practice Book govern subpoenas at trial, the logic is that if the rules provide for objection by the person to whom discovery is directed, then no one else has standing to object on his behalf.
The defendant, in turn, cites several cases in which a party has been able to object on behalf of a nonparty. These includeCahn v. Cahn, 26 Conn. App. 720 (1992), and Haeferle v. Ford, 21 Conn. L. Rptr. No. 7, p. 230 (March 30, 1998) (memorandum filed January 15, 1998). In Cahn the Appellate Court sua sponte noted that a party had sought a protective order regarding the deposition of a nonparty witness and suggested that the procedure was superficially inconsistent with the language of § 221 (now § 13-5) of the Practice Book. The court justified the apparent inconsistency by stating that "[a]lthough the discovery being sought by the defendant was not from the plaintiff, the protective order was necessary to protect a party's interest. Accordingly, the plaintiff properly filed a motion for a protective order, to prevent the defendant from conducting depositions of nonparty witnesses." Cahn, supra, at 728. Similarly, in Haeferle, a party was held to be entitled to object to discovery from a nonparty witness, in this instance her employer, to protect herself from disclosure of a variety of items in her personnel file.
The plaintiff seeks to distinguish Cahn and Haeferle on the ground that in these cases, it was apparently the interest of the party which was sought to be protected, while in the case at hand CT Page 2031 it is apparently the interest of the physicians at stake, in that the disclosures have to do with the physicians billing records, reports, income tax returns, and the like. The defendant argues that, in a more general sense, it is the interest of the defendant being asserted, because, among other things, hinging the ability to testify on the disclosure of the items requested would likely result in the witnesses' not testifying.
The cases cited — and I add to the list Lohr v. North AmericanVan Lines, 197 Ct. Sup. 1478 (February 18, 1997) — seem to suggest that a literal interpretation of the "standing" concept as urged by the plaintiff in this case leads to awkwardness at best and at worst, rather gross injustice. If the plaintiff's position is to be adopted in all its rigor, then a nonparty deponent may be required to spend significant amounts of money for his own lawyer, in addition to whatever burden is placed upon him by the demands of the discovery itself, and the system may indeed be more cumbersome than it already is.[3]
Perhaps more fundamentally, the cases cited tacitly appear to recognize the reality that in the course of representing their own clients attorneys frequently argue positions on behalf of nonparties. Suppose in this case, for example, that a physician on the witness stand should be asked about his individual income tax returns for the last three years on cross examination and the attorney who called the witness should object. Although creativity is not necessarily to be discouraged, I would not anticipate a remonstrance on the ground that the attorney could not object on behalf of the witness. Although there may be some instances in which the interest of the witness is entirely distinct from the interest of the party, such that the party may not have standing to object, I find that the interest of the party in presenting its case is sufficient in this case to confer standing.[4]
Turning to the merits, I find that the issue is somewhat premature, because we do not know at this point precisely what the witnesses are able to produce without undue burden. Ordinarily at trial one would see what the witness produced, listen to the efforts made, and make, hopefully, an appropriate ruling. Presumably the requests are made to try to develop an argument of bias or predisposition on the part of the witnesses, and, as a general proposition, the plaintiff is quite correct, as supported by the case law presented, in his assertion, for example, that inquiry into the amount of income generated by CT Page 2032 IME's is appropriate. The general proposition does not dispose of the issue of what documents may be compelled, however, and the following rulings are made as guidelines for production, in an effort to avoid delay and interruption at trial.
1. Production of prior reports by the doctors concerning other litigants, of both IME's and record reviews, is not required. Although there may be some degree of relevance, in that the plaintiff may seek to discover some sort of pattern which, he might argue, would affect credibility, and it might be possible to maintain a degree of confidentiality by massively deleting references to names and the like, I find that the burden is overwhelming and the effort would not be likely to produce evidence of much relevance. The witness, for example, would presumably be entitled to explain reasoning in each case, and it would be most time-consuming to try issues concerning entirely different people.
2. Production of personal and corporate income tax returns and 1099 forms is not required. Although there arguably is some relevance to the information, there is also an expectation of confidentiality in tax returns which is not to be lightly ignored.
3. Billings for IME's and record reviews are, to the extent possible, to be provided. There is little expectation of confidentiality in billing amounts and it may turn out that such records can be provided with relatively little time and effort. The cost of providing the information shall, however, be borne by the plaintiff.
Beach, J.